Twentieth Century Fox Film Corporation v. Warner Bros. Entertainment, Inc. et al    Doc. 1

FILED
2008 FEB -8 PM 2:11
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES
BY_____

1  LOUIS A. KARASIK (State Bar No. 100672)
2  LISA GILFORD (State Bar No. 171641)
   PETER E. MASAITIS (State Bar No. 202006)
3  CASONDRA K. RUGA (State Bar No. 237597)
   **WESTON, BENSHOOF, ROCHEFORT,**
4     **RUBALCAVA & MacCUISH LLP**
   333 South Hope Street
5  Sixteenth Floor
   Los Angeles, California 90071
6  Telephone: (213) 576-1000
   Facsimile: (213) 576-1100
7  lkarasik@wbcounsel.com
   jgilford@wbcounsel.com
8  pmasaitas@wbcounsel.com
   cruga@wbcounsel.com
9
   Attorneys for Plaintiff
10 TWENTIETH CENTURY FOX FILM CORPORATION

11

12                    UNITED STATES DISTRICT COURT

13
                      CENTRAL DISTRICT OF CALIFORNIA
14

15 | TWENTIETH CENTURY FOX FILM        | Case No. CV08-00889 DDP
16 | CORPORATION,                      |                          AJWx
17 |         Plaintiff,                | COMPLAINT FOR:
                                       | (1) COPYRIGHT
18 | v.                                |     INFRINGEMENT
                                       |     (17 U.S.C. §§ 101 et seq.)
19 | WARNER BROS. ENTERTAINMENT,       | (2) INTERFERENCE WITH
   | INC.; WB STUDIO ENTERPRISES, INC.;|     CONTRACT
20 | WARNER BROS. PICTURES and DOES 1  |
   | – 10.                             | (3) BREACH OF CONTRACT
21 |                                   |
   |         Defendants.               | (4) ACCOUNTING
22 |                                   |
                                       | (5) DECLARATORY RELIEF
23
24                                       DEMAND FOR JURY TRIAL
25
26
27
28

1087046.11

Dockets.Justia.com

# TABLE OF CONTENTS

| | Page |
|---|---|
| SUMMARY OF ACTION | 1 |
| JURISDICTION AND VENUE | 1 |
| THE PARTIES | 2 |
| FACTUAL ALLEGATIONS | 3 |
| FIRST CLAIM FOR RELIEF (Copyright Infringement) | 10 |
| SECOND CLAIM FOR RELIEF (Interference with Contract) | 11 |
| THIRD CLAIM FOR RELIEF (Breach of Contract) | 12 |
| FOURTH CLAIM FOR RELIEF (Accounting) | 13 |
| FIFTH CLAIM FOR RELIEF (Declaratory Relief) | 13 |
| PRAYER FOR RELIEF | 14 |

## SUMMARY OF ACTION

1.  Plaintiff Twentieth Century Fox Film Corporation ("Fox" or "Plaintiff") brings this action to enforce Fox's exclusive copyright and contract rights in a motion picture property entitled "*The Watchmen,*" including Fox's exclusive rights to produce and develop the picture and to distribute the work throughout the world. Fox acquired rights to *The Watchmen* property over the period 1986 to 1990 under a series of contracts and agreements whereby Fox at substantial expense obtained the rights from the creators and authors of the original works. As detailed herein, defendant Warner Bros. Pictures ("WBP") is now proceeding to produce, develop and enter into distribution arrangements for a motion picture based on *The Watchmen* notwithstanding WBP's actual notice of Fox's rights in the work, and notwithstanding WBP's express contractual obligations to honor Fox's rights in *The Watchmen*. Fox seeks injunctive relief to restrain WBP from taking actions that violate Fox's copyrights and which stand to forever impair Fox's rights to control the distribution and development of this unique work. Fox also seeks damages to compensate Fox for losses incurred as a result of WBP's breach of obligations owed to Fox, and for a declaration of rights, including Fox's distribution rights, changed elements protection and other rights that WBP refuses to honor despite Fox's demand therefore.

## JURISDICTION AND VENUE

2.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and (b) (the Copyright Act) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The Court also has federal jurisdiction under 28 U.S.C. § 2201 (the Declaratory Judgment Act).

3.  The Court has personal jurisdiction over Defendants, all of whom have sufficient continuous, systematic, and routine contacts with California to establish such jurisdiction.

4.  Venue is proper pursuant to 28 U.S.C. § 1391(b) because a

1

substantial part of the events giving rise to the claims herein occurred within this district, Fox is located within this district and the wrongful acts of Defendants alleged herein occurred in and caused injury to Fox in this district.

## THE PARTIES

5.  Plaintiff Twentieth Century Fox Film Corporation ("Fox") is a Delaware corporation with its principal place of business in Los Angeles, California. Among other things, Fox creates, produces, distributes, and markets motion pictures and television shows throughout the world

6.  Fox is informed and believes and thereon alleges that defendant Warner Bros. Entertainment, Inc. ("WB Entertainment") is a Delaware corporation with its principal place of business in Los Angeles, California, and is the parent company of defendant WB Studio Enterprises, Inc. ("WB Studios"), also a Delaware corporation, also with its principal place of business in Los Angeles, California. Fox is informed and believes that defendant Warner Bros. Pictures is a division of WB Studios. WB Entertainment, WB Studios and Warner Bros Pictures are collectively referred to herein as "WBP." WBP is in the business of creating, producing, distributing and marketing motion pictures and television shows throughout the world.

7.  Fox does not know the true names and capacities of the defendants sued herein as Does 1 through 10, and therefore sues those defendants by such fictitious names. Fox will seek leave to amend this Complaint to set forth those defendants' true names and capacities when they have been ascertained. Fox is informed and believes and, on that basis, alleges that each of the fictitiously-named defendants acted as an agent, employee, servant, principal, partner, shareholder, co-conspirator or aider or abettor of WBP to engage in the wrongful conduct described herein, acted within the scope of their authority as such agents or abettors of the other defendants, or, in the alternative, approved and ratified acts and omissions of the other defendants or is otherwise responsible for the acts and omissions alleged in this

108704611

Complaint.

## FACTUAL ALLEGATIONS

8. In or about 1986 to 1990, Fox acquired all motion picture rights to a highly acclaimed literary work consisting, *inter alia*, of a graphic novel by Alan Moore and subsequent screenplays by authors Charles McKeown and Sam Hamm based on a D.C. Comics comic book series known as *The Watchmen* (collectively, "*The Watchmen*" or "the Work"). Certificates of Registration for the copyrighted works were filed with the Copyright Office over the years 1986 to 1990, true and correct copies of which are attached hereto as Exhibit 1. Fox remains the exclusive owner of copyrights in *The Watchmen* as detailed herein.

9. In or about June 17, 1991, Fox entered into a Quitclaim Agreement and accompanying Short Form Quitclaim (collectively, "1991 Quitclaim") with Largo International, N.V. ("LINV") whereby Fox quitclaimed certain of its rights in *The Watchmen* to LINV. The 1991 Quitclaim expressly preserved, reserved and/or granted to Fox various rights, including exclusive rights to distribute the first motion picture produced based on *The Watchmen*. The 1991 Quitclaim provided, *inter alia*, as follows:

   a. LINV agreed to pay Fox a substantial purchase price, plus interest and other charges, all as detailed more fully in the 1991 Quitclaim ("Purchase Price");

   b. Fox was granted distribution rights to the first motion picture produced based on *The Watchmen*. LINV agreed that *The Watchmen* would be produced by LINV and distributed by Fox as a Subject Picture pursuant to the terms of the Largo Agreement for the time periods, territories and media set forth in the Largo Agreement (detailed more fully below) ("Distribution Rights");

   c. LINV agreed to pay Fox a profit participation equal to 2.5% of 100% of the worldwide net proceeds of the picture and any subsequent motion

3

picture based in whole or in part on *The Watchmen*, all as detailed more fully in the 1991 Quitclaim ("Profit Participation").

10. Under the 1991 Quitclaim, Fox's rights with respect to *The Watchmen* commenced on the date of the agreement (June 17, 1991). The 1991 Quitclaim further provides that the terms of the 1991 Quitclaim supersede any prior agreement between the parties as to its subject matter, and that the terms bind and inure to the benefit of the parties and their heirs, successors and assigns. A true and correct copy of the 1991 Quitclaim is attached hereto as Exhibit 2.

11. The "Largo Agreement" referred to in the 1991 Quitclaim is the Domestic Distribution Agreement between Fox and Largo Entertainment ("Largo") dated February 1, 1990, as amended by certain Supplemental Agreements also dated February 1, 1990 ("Largo Domestic Agreement"), and the Foreign Film Lease Agreement between Fox and LINV dated May 25, 1990 ("Largo Foreign Agreement") (collectively, "Largo Agreement"). See 1991 Quitclaim, ¶1(a)(vi). The Largo Agreement provides that Fox's distribution of pictures would be for the following time periods and territories:

  a. Domestically: The greater of (i) 14 years from the initial theatrical release of the picture in the Domestic Territory (the United States, Canada and their respective territories and possessions), or (ii) until Fox had at least one standard cycle of television syndication, but in no event more than 20 years from initial theatrical release of the picture in the Domestic Territory, all as detailed more fully in the Largo Agreement. See Largo Domestic Agreement, ¶1(b).

  b. Foreign: 10 years from the date of initial theatrical release of the picture in the Foreign Territory (the world, excluding Japan and the Domestic Territory of the Largo Domestic Agreement), all as detailed more fully in the Largo Foreign Agreement. See Largo Foreign Agreement, ¶1(b).

  c. Extensions: Fox had certain rights to extend the distribution term. See

4

Largo Domestic Agreement, ¶ 1(d); Largo Foreign Agreement, ¶ 1(d).

12. In or about November 15, 1991, the Largo Domestic Agreement was amended and *The Watchmen* was identified as a "quitclaimed" property to be produced by Largo as a Subject Picture under that agreement, as amended. The territories and time periods of Fox's Distribution Rights as detailed in the Largo Agreement, as amended, are hereafter referred to as the "Distribution Term." Fox has performed all terms and conditions necessary under the 1991 Quitclaim and Largo Agreement, as amended, to obtain all rights thereunder, except to the extent performance has been excused or prevented by Largo or its successors-in-interest. A true and correct copy of the Largo Agreement and the November 1991 amendment to the Largo Agreement are attached hereto as Exhibits 3 and 4.

13. Largo was a joint venture, one of whose principal members was Golar, Inc. ("Golar"), a company owned and controlled by producer Lawrence Gordon ("Gordon"). In November 1993, Largo accepted the decision of Golar to withdraw from Largo and Largo assigned, transferred and conveyed to Golar all rights, if any, in *The Watchmen* held by Largo.

14. Thereafter, Fox and Gordon pursued discussions for an agreement under which Gordon could produce *The Watchmen*. In or about July 6, 1994, Fox entered into a Settlement and Release Agreement with Gordon and a "Turnaround Agreement" with Lawrence Gordon Productions, Inc. (Lawrence Gordon and Lawrence Gordon Productions, Inc. are collectively referred to as "Gordon") concerning *The Watchmen*. A true and correct copy of the Turnaround Agreement is attached hereto as Exhibit 5. The Turnaround Agreement provided for the transfer of Fox's rights in *The Watchmen* to Gordon, subject to certain conditions precedent, and specified that Fox would have certain rights in *The Watchmen*. The Turnaround Agreement provided, *inter alia*, as follows:

    a. Fox gave Gordon the right to acquire all of Fox's right, title and interest in *The Watchmen* by first reimbursing Fox for all expenses and charges

5

incurred by Fox in connection with *The Watchmen*, together with certain other administrative charges and interest, all referred to in the Turnaround Agreement as the "Buy-Out Price".

b. In the event (i) Gordon entered into any agreement with a studio or third-party to develop or produce *The Watchmen*, or (ii) Gordon or any party with whom he was negotiating should do or authorize any writing to be done in connection with the project, or (iii) Gordon or any party with whom he was negotiating authorized or commenced photography of *The Watchmen*, Gordon was required to pay Fox the Buy-Out Price. Upon such payment (and upon Gordon additionally providing Fox with a certain specified indemnity agreement), Fox agreed to quitclaim its rights in *The Watchmen*, subject to Fox's further rights in the project as specified in the agreement, all as detailed more fully in the Turnaround Agreement.

c. If, prior to payment of the Buy-Out Price, there was a change in the project's existing elements (for example, changes in director, principal cast, storyline or reduction in the budget) or financial terms regarding such elements or Gordon's involvement in the project (collectively, "Changed Elements and Terms"), Gordon was obligated to submit the Changed Elements and Terms to Fox, and Fox was granted the right, *inter alia*, to elect to proceed with the development and/or production of *The Watchmen* based on such Changed Elements and Terms, all as detailed more fully in the Turnaround Agreement. In the event Fox did not elect to proceed with the project based on the Changed Elements and Terms, Gordon could acquire Fox's rights as provided for in the Turnaround Agreement, but Gordon was required to re-submit the project to Fox each time Changed Elements and Terms were introduced, and Fox in each case had the right to elect to proceed with the development or

6

production of *The Watchmen* based on such Changed Elements and Terms.

    d. Upon payment of the Buy-Out Price, Gordon agreed to pay Fox a profit participation of 2.5% of 100% of the Net Profits of each and every motion picture, remake or sequel based on *The Watchmen*, all as detailed more fully in the Turnaround Agreement ("Net Profit Right"); and

    e. The rights granted to Gordon under the Turnaround Agreement were personal to Gordon and could not be assigned or transferred without the prior approval of Fox.

15. Neither Gordon nor WBP has paid Fox the Buy-Out Price. Neither Gordon nor WBP have at any time advised Fox of Changed Elements and Terms or submitted *The Watchmen* project to Fox pursuant to the Turnaround Agreement. Gordon at no time has sought any approval from Fox to assign rights under the Turnaround Agreement. Neither Gordon nor WBP have performed any of the express conditions of the Turnaround Agreement necessary to acquire any rights in *The Watchmen* from Fox. Fox is informed and believes and thereon alleges that Changed Elements and Terms have been introduced to the project. Fox therefore has the right to have *The Watchmen* project submitted to Fox with the Changed Elements and Terms and Fox has the right to elect to proceed with production and development of *The Watchmen* predicated upon the Changed Elements and Terms.

16. In or about May 1996, WBP entered into an Option/Quitclaim Agreement ("WBP Agreement") with, *inter alia*, Golar, whereby WBP purported to acquire rights in *The Watchmen*. At the time it entered into the WBP Agreement, WBP had actual knowledge of the 1991 Quitclaim. In fact, the WBP Agreement expressly identifies the 1991 Quitclaim in WBP's description of the chain of title for *The Watchmen*.

17. WBP has expressly covenanted and agreed to faithfully perform all obligations owed to Fox under the 1991 Quitclaim. The WBP Agreement provides

7

that WBP expressly agrees to "carry out and faithfully perform each and all of the terms, covenants, conditions and other provisions relating to [*The Watchmen*] contained in" the 1991 Quitclaim. Despite this covenant and agreement, WBP has not afforded Fox any of the rights set forth in the 1991 Quitclaim, including the Distribution Rights, and now denies that Fox is entitled to any rights thereunder.

18. Fox is informed and believes, and thereon alleges, that WBP chose to be either willfully ignorant of the pertinent facts related to Fox's interest in *The Watchmen* under the 1991 Quitclaim and Turnaround Agreement, or acted unreasonably and without good faith in that regard. WBP at a minimum failed to conduct reasonable, adequate or good faith investigation into the chain of title for *The Watchmen*, as evidenced, *inter alia*, by the gap in title in *The Watchmen* disclosed on the face of the WBP Agreement. For example, the WBP Agreement incorrectly states that under the 1991 Quitclaim, Fox "quitclaims all of its right, title and interest in and to the [*The Watchmen*] to Largo." WBP Agreement, ¶1.2.20. In point of fact, the 1991 Quitclaim expressly reserves, preserves and grants to Fox, *inter alia*, the Distribution Rights and other important rights. The WBP Agreement references no document, agreement, transaction or other transfer whereby LINV, Largo, Golar or any other party has purported to acquire or satisfy any of the rights held by Fox under the 1991 Quitclaim.

19. WBP took purported title to *The Watchmen* under the WBP Agreement with actual notice of a prior transfer and reservation to Fox in the 1991 Quitclaim of the same rights that WBP claims to have acquired. The absence of clear title is disclosed in WBP's own contract documents, and WBP went forward in the absence of any documents providing for or explaining any transfer by Fox of the express rights held by Fox under the 1991 Quitclaim. WBP also had notice of other contracts and agreements that were sufficient to put WBP on inquiry notice as to Fox's rights in *The Watchmen*. For at least these reasons, WBP was on inquiry notice that required WBP to conduct further, reasonable and good faith investigation

8

into Fox's rights in the picture and to ascertain the legitimacy of WBP's claimed rights in *The Watchmen*.

20. Had WBP acted in good faith and made reasonable inquiry into Fox's rights in *The Watchmen*, WBP would have discovered, if it did not already know, that Fox had the right to have *The Watchmen* project submitted to Fox based on the Changed Elements and Terms, that Fox had the right to elect to proceed with development and production of *The Watchmen* based on the Changed Elements and Terms and that Fox had rights as described in the Turnaround Agreement to payment of the Buy-Out Price and Net Profit Participation.

21. Accordingly, WBP is not a good faith purchaser of any rights in *The Watchmen* and is charged with constructive notice, inquiry notice and knowledge of all facts that WBP would have acquired had it acted reasonably and in good faith, so that Fox's prior transfers of rights have priority over and defeat WBP's claimed rights.

22. In or about July 2007, Fox learned that WBP was purporting to produce *The Watchmen* and was intending to commence principal photography. Prior to that time, Fox was unaware, and had no reason to know or suspect, that WBP was disclaiming that Fox had any rights under the 1991 Quitclaim or Turnaround Agreement. Upon learning of WBP's actions, Fox took prompt steps to notify WBP that its actions violated Fox's rights under the 1991 Quitclaim and the Turnaround Agreement. Fox in August 2007 demanded that WBP cease and desist from producing, marketing, distributing or otherwise taking further steps to use *The Watchmen* to WBP's commercial advantage, all without affording Fox any of the rights described in the 1991 Quitclaim and Turnaround Agreement. Despite demand by Fox, WBP refuses to cease and desist and has, to the contrary, continued to pursue development, marketing and distribution of *The Watchmen*, all while expressly denying that Fox has any rights. Furthermore, after asserting its rights in *The Watchmen* as against WBP, Fox learned that another purported rights holder in *The*

1087046.11

*Watchmen* has claimed rights in *The Watchmen* arising out of alleged co-financing arrangements with WBP. On information and belief, Fox alleges that this dispute has been resolved by WBP providing this other purported rights holder with a portion of WBP's claimed interest in *The Watchmen*. Notwithstanding any resolution between those two parties, the exploitation of rights in *The Watchmen* by either or both parties violates Fox's rights in *The Watchmen* as described above.

23. As further detailed below, Fox brings claims against Defendants under the Copyright Act for infringement of Fox's copyrights in *The Watchmen*, and tort and contract claims to the full extent Defendants' conduct has violated additional independent rights under state law.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 et seq.)
### (Against all Defendants)

24. Fox incorporates by reference each and every allegation contained in paragraphs 1 through 23 as if set forth fully herein.

25. Fox is the owner or beneficial owner of the copyrights here at issue. Fox's copyrights in *The Watchmen* include the following:

    a. Fox, at a minimum, owns exclusive Distribution Rights in *The Watchmen* under the 1991 Quitclaim for the Distribution Term.

    b. Fox has exclusive rights to *The Watchmen* under the Changed Elements and Terms provisions of the Turnaround Agreement.

26. Defendants have made and/or are threatening to make unauthorized and infringing use of Fox's copyrights. Fox is informed and believes that WBP and other Defendants have distributed, contracted to distribute or made arrangements to distribute *The Watchmen* in violation of Fox's rights. Fox is informed and believes that WBP and other Defendants are producing, developing, filming and displaying or intending to display a motion picture based on Changed

10

Elements and Terms in *The Watchmen*. All of these uses infringe one or more of the copyrights held by Fox in *The Watchmen* as alleged herein.

27. All of Defendants' acts of infringement alleged herein were committed and are continuing to be committed willfully.

28. As a result of Defendants' acts of infringement, Fox has been damaged. Fox is entitled to actual damages or statutory damages (as Fox may later elect). The full extent of Fox's damages is presently unascertained and Fox will seek leave to amend this Complaint as necessary to state the full amount.

29. Furthermore, by reason of Defendants' infringement and continued and threatened infringement, Fox has sustained and will continue to sustain actual, substantial, and irreparable harm, the extent of which cannot be fully ascertained at this time, and which cannot be fully compensated by money.

30. Fox is entitled to preliminary and permanent injunctive relief enjoining and preventing Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from having, copying, distributing, displaying or making any other unauthorized use of *The Watchmen* in a manner inconsistent with Fox's rights as detailed herein.

## SECOND CLAIM FOR RELIEF
## INTERFERENCE WITH CONTRACT
**(Against all Defendants)**

31. Fox incorporates by reference each and every allegation contained in paragraphs 1 through 30 as if set forth fully herein.

32. Golar is the purported contractual successor and assignee of certain rights in *The Watchmen* under the 1991 Quitclaim. As such, Golar owed Fox all of the contractual obligations owed by LINV under the 1991 Quitclaim, which provides that its terms bind and inure to the benefit of the respective parties' successors and assigns.

33. At the time of the WBP Agreement, or before, WBP and the other

11

Defendants had actual knowledge of the contractual obligations owed to Fox under the 1991 Quitclaim. WBP and the other Defendants have taken steps to induce Golar to breach those contractual obligations by inducing Golar to enter into agreements purporting to transfer all rights in *The Watchmen* to WBP without regard for Fox's rights. WBP's conduct was intended or substantially certain to result in Golar breaching obligations owed to Fox under the 1991 Quitclaim. As a direct result of Defendants' wrongful conduct, Golar has breached obligations owed to Fox under the 1991 Quitclaim.

34. As a direct and proximate result of Defendants' conduct, Fox has been damaged. The full extent of Fox's damages is presently unascertained and Fox will seek leave to amend this Complaint as necessary to state the full amount.

35. In taking the actions alleged herein, WBP acted in willful or conscious disregard of Fox's rights, thereby committing acts of fraud, oppression and/or malice so as to entitle Fox to punitive damages in an amount sufficient to punish and make an example of WBP.

### THIRD CLAIM FOR RELIEF
### BREACH OF CONTRACT
(Against WBP)

36. Fox incorporates by reference each and every allegation contained in paragraphs 1 through 35 as if set forth fully herein.

37. Fox has performed all terms, conditions and covenants required on its part to be performed under the 1991 Quitclaim, except to the extent such performance has been excused or prevented by Defendants.

38. WBP's express covenant and agreement to faithfully perform all terms and conditions of the 1991 Quitclaim was intended to benefit Fox. Fox is a third-party beneficiary of WBP's contractual promises. WBP has breached its contractual obligations owed under the 1991 Quitclaim.

39. As a direct and proximate cause of WBP's breaches as

12

hereinbefore alleged, Fox has been damaged. The full extent of Fox's damages are not presently ascertained, and Fox will seek leave to amend this Complaint as necessary to more fully specify Fox's damages.

## FOURTH CLAIM FOR RELIEF

### ACCOUNTING

**(All Defendants)**

40. Fox incorporates by reference each and every allegation contained in paragraphs 1 through 39 as if set forth fully herein.

41. Fox seeks an accounting from Defendants of all incomes, profits and revenues associated with their development and distribution of *The Watchmen* to ascertain all amounts owing to Fox from these Defendants under the 1991 Quitclaim and Turnaround Agreement.

## FIFTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

**(Against All Defendants)**

42. Fox incorporates by reference each and every allegation contained in paragraphs 1 through 41 as if set forth fully herein.

43. An actual controversy has arisen and now exists between Fox, on the one hand, and Defendants, on the other, with respect to the matters alleged herein including each of the following:

   a. Fox asserts that it has the right to have *The Watchmen* project submitted to Fox so that Fox can elect to proceed with development and production of *The Watchmen* in accordance with the Changed Elements and Terms protections of the Turnaround Agreement, and that Fox continues to have valid and enforceable rights under the Turnaround Agreement thereto, whereas Defendants deny that Fox has any such rights.

   b. In the event Fox elects not to proceed with production and

development of *The Watchmen* based on the Changed Elements and Terms protections of the Turnaround Agreement Fox asserts that it is entitled to payment of the Buy-Out Price and Net Profit Participation under the Turnaround Agreement, whereas Defendants deny Fox has any such rights.

c. Fox asserts that it possesses, at a minimum, Distribution Rights in *The Watchmen* for the Distribution Term, that Fox continues to have valid and enforceable rights under the 1991 Quitclaim, and that Defendants are obligated to afford Fox rights with respect to *The Watchmen* thereunder, whereas Defendants deny all of the same.

44. Fox requests that this Court make and enter a binding judicial declaration in accordance with Fox's contentions as set forth herein. The requested declaration is both necessary and proper at this time under the circumstances in that the interests of judicial economy and substantial justice will be served thereby. A judicial declaration is also necessary and appropriate so that the parties may be apprised of their respective rights, obligations and legal relations, including their respective rights under the contracts referenced herein.

## PRAYER FOR RELIEF

WHEREFORE, Fox prays for judgment against Defendants as follows:

### AS TO THE FIRST CLAIM FOR RELIEF:

1. For actual damages or statutory damages (at Fox's election) in accordance with proof for each act of infringement;

2. For preliminary and permanent injunctive relief enjoining Defendants and all persons acting in concert with them from reproducing, distributing, publishing, adapting, displaying, advertising, promoting, offering for sale or transfer and/or selling or transferring any production of *The Watchmen* or any work substantially similar to same;

3. For Fox's reasonable attorney's fees and costs.

**AS TO THE SECOND CLAIM FOR RELIEF:**

4. For actual damages in accordance with proof;

5. For punitive damages in accordance with proof.

**AS TO THE THIRD CLAIM FOR RELIEF:**

6. For actual damages in accordance with proof.

**AS TO THE FOURTH CLAIM FOR RELIEF:**

7. For an accounting of incomes and profits produced by *The Watchmen*.

**AS TO THE FIFTH CLAIM FOR RELIEF:**

8. For a declaration of rights respecting each of the matters set forth above in paragraph 43 and its subparts; and

**AS TO ALL CLAIMS FOR RELIEF:**

9. For such other and further relief as the Court deems just and proper;

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

DATED: February 8, 2008         Respectfully submitted,

**TWENTIETH CENTURY FOX FILM CORPORATION**

LOUIS A. KARASIK
LISA GILFORD
PETER E. MASAITAS
CASONDRA K. RUGA
**WESTON, BENSHOOF, ROCHEFORT, RUBALCAVA & MacCUISH LLP**

_Louis A. Karasik by LAK_
Louis A. Karasik

Attorneys for Plaintiff
TWENTIETH CENTURY FOX FILM CORPORATION

15